Andrea Lee **COLLINS, individually and as Administratrix of the Goods, Chattels and Credits which were of Billy Ray Collins, Jr., deceased, and Billy Ray Collins, Sr., Plaintiffs,**

v.

Luis **RESTO, et al., Defendants.**

No. 83 Civ. 5480(RO).

United States District Court, S.D. New York.

Sept. 19, 1990.

Pulvers, Pulvers & Thompson, New York City, for plaintiff Andrea Lee Collins (Marc R. Thompson, of counsel).

Lawrence Goldhirsch, New York City, for plaintiff Billy Collins, Sr.

Herrick & Feinstein, New York City, for defendant Top Rank, Inc. (Susan T. Dwyer, of counsel).

Sidley & Austin, New York City, for defendant Madison Square Garden Center, Inc. (Kelley A. Cornish, of counsel).

1. The parties do not dispute that Collins suffered grave head and eye injuries that effectively put an end to a promising career. Collins having died during the course of this lawsuit, the action is now being prosecuted by his wife, Andrea Lee Collins, administrator of his estate, and by his father, Billy Ray Collins, Sr., who was the boxer's manager.

2. After the match it was discovered that Resto's trainer, Carlos "Panama" Lewis, and his "second" had removed padding from Resto's gloves. Resto and Lewis were criminally prosecuted for these acts and, in 1986, following a jury trial, they were convicted of assault in the second degree, reckless assault, criminal possession of a weapon in the fourth degree and conspiracy to assault. Lewis also was convicted of tampering with the outcome of a sporting event. Both have served jail terms imposed thereon.

3. That agreement provided that, at Top Rank's expense, MSG was to "designate or furnish ... [its] special police, in a number sufficient in

## OPINION AND ORDER

OWEN, District Judge:

This personal injury action arises from injuries sustained by now-deceased boxer Billy Ray Collins, Jr., during a 1983 bout with Luis Resto promoted by defendant Top Rank at Madison Square Garden (MSG).[1] The criminal case has established that Collins' injuries resulted from his trainer's removing padding from Resto's boxing gloves.[2] MSG and Top Rank now move for summary judgment. Both plaintiffs oppose Top Rank's motion. Plaintiff Collins, Sr., does not oppose MSG's motion.

██ Plaintiff's claim against MSG relies upon the contract between Top Rank and MSG, which obligated MSG to provide security guards for the event.[3] Plaintiff alleges that MSG should have posted a security guard in Resto's dressing room so that the tampering would have been prevented.[4] However, there is no precedent for imposing such a duty upon MSG, and indeed the New York State Athletic Commission's regulations governing the conduct of boxing events specifically restrict who may be present in a boxer's dressing room prior to a match, and a MSG guard is not permitted.[5]

Moreover, it is manifestly clear that the security concerns contemplated by the con-

[its] opinion, which shall be conclusive, adequately to police the portions of the Premises inside and out affected by [Top Rank's] use thereof."

4. Evidence in the criminal case indicated that there were a number of people in Resto's dressing room prior to the fight, and Resto's trainer was able to accomplish the tampering by taking the gloves into a bathroom adjoining the dressing room.

5. 19 N.Y.C.R.R. 215.16 provides: "No one shall be allowed in a boxer's dressing room except his manager, his seconds, the commission representatives, members of the press and such members of the promoting corporation as are permitted by the commission. This section must be posted by such corporation at the entrance of all dressing rooms."

tract were more focused on improper access to the dressing rooms by unauthorized persons, rather than conduct within the dressing rooms; MSG posted its security guards at all of the corridor entrances that would lead to the boxers' dressing rooms, and the Athletic Commission itself positions an inspector near the entrance to the dressing room area, but does not anywhere in its rules require a security person in the boxers' dressing rooms.[6] Based upon all of the above circumstances, I conclude that, as a matter of law, plaintiff has not demonstrated a necessary element of its claim, that is, that MSG had a duty to place security personnel in Resto's dressing room. As such, plaintiff's claim against MSG must be dismissed.

■ Plaintiffs similarly argue that defendant Top Rank had a duty, that it breached, to prevent the tampering with Resto's gloves. Plaintiffs claim that Top Rank breached this duty in two ways, first by providing the boxing gloves to Resto without making sure that a New York State Boxing Inspector would be present at all times prior to the bout or without having its glovemen present in Resto's dressing room up until the point that Resto gloved up, and second through the alleged negligence of the referee in failing to detect the tampering, whom plaintiffs claim

was an employee or, if an independent contractor, had some duty to Top Rank.

The rules governing the conduct of boxing matches require that New York State Athletic Commission inspectors be present while the boxers glove up so that they can inspect the bandaging on the boxers' hands,[7] and lace up and tape the boxers' gloves prior to the match.[8] Thus, the relevant regulatory body contemplates that, even if a boxer is left alone with his gloves, the inspector, who I note also is a defendant in this action, is the person to detect any possible glove-tampering. The contract with Top Rank did not require it to monitor the gloves prior to the match, and plaintiffs have not alleged that other boxing promoters engage in practices any different from Top Rank's.

Moreover, as previously discussed, Top Rank would not have been permitted to have a representative in Resto's dressing room unless specifically permitted by the Commission. In light of that regulatory structure, I conclude that although Top Rank, as the promoter, was contractually obligated to provide the boxing gloves for the match,[9] it bore no duty beyond providing those gloves to the contestants in an unaltered, untampered state.

6. The fact that MSG and the Commission focused their security efforts on access to the dressing room also ties into the issue of foreseeability, which would be relevant to the imposition of liability on MSG. Under New York law, a plaintiff attempting to hold a landowner liable for injuries sustained on the landowner's property as a result of criminal acts of a third party must establish that the conduct was foreseeable by the landowner. See, e.g., Nallan v. Helmsley–Spear, Inc., 50 N.Y.2d 507, 429 N.Y.S.2d 606, 613, 407 N.E.2d 451, 458 (1980). Plaintiffs herein have not demonstrated, much less alleged, that glove-tampering had ever taken place or been suspected at MSG or in a Top Rank-promoted match. Moreover, plaintiffs have not alleged that Resto had any record of such conduct in the past, or that other boxing arenas conduct their security differently than MSG does. Accordingly, even if the Commission's regulations did not prohibit MSG from positioning representatives in the dressing rooms, plaintiffs' claim would fail on the ground that the conduct in question was unforeseeable on the part of MSG.

7. 19 N.Y.C.R.R. 209.4 provides, in pertinent part: "These bandages shall be adjusted in the dressing room in the presence of a commission representative. Under no conditions are gloves to be placed on the hands of the contestant until the approval of the commission is stamped on the bandage by its representative."

8. 19 N.Y.C.R.R. 216.18 provides: "In all bouts, the gloves of each boxer will be adjusted in the dressing room under the supervision of the commission representative in charge, and the laces of each glove shall be knotted on the back of the wrists and there shall be placed on the wrists of the gloves, over the laces, a strip of one-inch adhesive tape. The gloves must be removed in the dressing room after the bout."

9. That contractual obligation is required by regulation. 19 N.Y.C.R.R. 215.11 provides: "The gloves shall be new for all main events and also for all bouts scheduled to be 10 or more rounds. All gloves are to be furnished by the licensed promoting corporation, and shall weigh not less than eight ounces."

█ With respect to the referee assigned to the Collins–Resto fight, who also is a defendant herein, plaintiffs claim that since Top Rank indirectly paid the referee's fee, it should be held liable for any negligence on the part of that referee. Assuming for purposes of this motion that there was negligence on the part of the referee,[10] Top Rank cannot be held liable for such negligence. Although the Athletic Commission's rules specify that the promoter pay the referee "in such sum and amounts as the commission shall order," 19 N.Y.C.R.R. 210.4(a), in fact that payment is made to the Commission along with other fees required to be paid by the promoter, and it is the Commission that makes the payment directly to the referee.

Moreover, for obvious reasons, the Commission's rules specify that the promoter may not have any input whatsoever in selecting the referee.[11] Based upon those circumstances, the referees, who are licensed, hired and supplied by the Commission, can in no way be characterized as employees of or have some independent contractors' duty to the promoters.[12]

Accordingly, having concluded that there are no triable issues of fact with respect to plaintiffs claims against defendants MSG and Top Rank, and that, accordingly, as a matter of law, plaintiffs' negligence and breach of contract claims cannot stand, defendants' motions for summary judgment are granted. So ordered.

---

**10.** I note, however, that the only responsibility imposed upon referees with respect to inspecting the contenders' boxing gloves is found in 19 N.Y.C.R.R. 210.1(a), which states: "The referee shall inspect each boxer's gloves and make sure that no foreign detrimental substances have been applied to either the gloves or the bodies of the boxers." The regulations make no mention of any duty to conduct a more extensive examination of the gloves.

**11.** 19 N.Y.C.R.R. 210.4(a) provides that "[a]ll judges and referees for bouts or exhibitions conducted by promoting corporations must be assigned by the commission...."

**12.** In this regard, see *Rosensweig v. State of New York,* 5 N.Y.2d 404, 185 N.Y.S.2d 521, 158 N.E.2d 229 (Ct.App.1959); *Classen v. State of New York,* 131 Misc.2d 346, 500 N.Y.S.2d 460 (Ct.Cl.1985).